NOT RECOMMENDED FOR PUBLICATION

File Name: 25a0218n.06

Case No. 24-3154

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Apr 25, 2025

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE |
|     Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE NORTHERN |
|  | ) | DISTRICT OF OHIO |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| MICH'EL LULU BEY, aka Michael Glanton, | ) | O P I N I O N |
|     Defendant - Appellant. | ) |  |
|  | ) |  |

Before:  COLE, McKEAGUE, and RITZ, Circuit Judges.

McKEAGUE, J., delivered the opinion of the court in which COLE, J., concurred.  RITZ, J. (pp. 7–9), delivered a separate opinion concurring in the judgment.

**McKEAGUE, Circuit Judge.**  Mich'el Lulu Bey pleaded guilty to attempted possession with intent to distribute fentanyl. On appeal, he argues that there was no probable cause to obtain the search warrant that led to his arrest. Because his claims lack merit, we **AFFIRM** the district court's judgment.

**I.**

In August 2023, the United States Postal Inspection Service identified a suspicious package originating from Tempe, Arizona. Postal Inspector Tyler Sherman examined the package's label and found that the sender and recipient names did not match their respective addresses. He removed the package from the mail stream and placed it under a wooden box, surrounded by four

other wooden boxes. He then brought in Maty, a certified drug-detecting dog, to smell the boxes in a blind lineup. After smelling the boxes, Maty indicated that the box with the package contained narcotics. Based on Maty's alert, Inspector Sherman obtained and executed a search warrant for the package. The package contained approximately 500 grams—or about 5,000 pills—of a substance containing fentanyl.

Inspector Sherman replaced the fentanyl pills with "sham material," placed a transmitter inside the package, and set up a controlled delivery to the package's intended destination: a residence in Toledo, Ohio. He also obtained an anticipatory search warrant for the residence, which would trigger if the package was carried inside the residence and subsequently opened. After an undercover postal inspector delivered the package to the residence, Bey took it inside. The transmitter indicated that the package was opened, and aerial surveillance observed Bey exit the residence and throw the contents of the package into a neighboring yard. During the search of the residence, law enforcement officers recovered a firearm, a plastic bag containing more fentanyl, and multiple cell phones. Bey was the only person in the residence at the time of the search, and he admitted that he generally lived alone.

The government filed a criminal complaint against Bey, charging him with conspiracy and possession with intent to distribute a controlled substance. Bey waived his right to counsel and elected to proceed pro se. After a preliminary hearing, the district court concluded that there was probable cause for both charges and bound the case over to the grand jury. Bey ultimately waived his right to an indictment and entered an open plea to one count of attempted possession with intent to distribute fentanyl. The court sentenced Bey to the mandatory minimum of 10 years in prison. Bey timely appealed.

**II.**

Bey's sole argument on appeal is that there was no probable cause to conduct the search of his residence.[1] Because Bey did not challenge the validity of the search in the district court, we review his claim only for plain error. *See United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019); Fed. R. Crim. P. 52(b). "An error is plain when it is obvious, affects substantial rights, and seriously affects the fairness or integrity of judicial proceedings." *United States v. Lopez-Medina*, 461 F.3d 724, 739 (6th Cir. 2006).

In this case, three investigatory steps preceded the search of Bey's residence. First, Inspector Sherman had reasonable suspicion to pull the package from the mail stream for further investigation. Second, Maty's alert during the blind lineup established probable cause to obtain a search warrant for the package. Third, the discovery of fentanyl in the package provided probable cause to obtain an anticipatory search warrant for Bey's residence. Because all three steps complied with the Fourth Amendment, Bey's argument fails.[2]

**A.**

Bey first claims that Inspector Sherman was not justified in removing the package from the mail stream. Generally, packages delivered through the mail are protected by the Fourth

---

[1] The government argues that Bey waived this claim because he did not enter a conditional plea that reserved his right to appeal whether there was probable cause to search his residence. *See United States v. Abdulmutallab*, 739 F.3d 891, 904 (6th Cir. 2014) ("This court has held that a defendant who pleaded guilty may not appeal an adverse ruling on a pre-plea motion to suppress evidence unless he has preserved the right to do so by entering a conditional plea of guilty[.]" (internal quotation marks omitted)). But because Bey "raises a straightforward issue under the Fourth Amendment," we elect to proceed to the merits of his appeal. *United States v. Duplessis*, No. 22-1511, 2023 WL 6926859, at *2 (6th Cir. Oct. 19, 2023) (addressing the merits of a motion to suppress even though the defendant entered an unconditional guilty plea).

[2] In his appellate brief, Bey also claims that the district court "abused its discretion in finding probable cause for the charges in this case." Appellant Br. at 6. But the remainder of Bey's brief only addresses whether there was probable cause to conduct the search, not whether there was probable cause to bind the case over to the grand jury. Thus, we decline to address the latter argument. *See United States v. Gray*, 692 F.3d 514, 521 (6th Cir. 2012) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

Amendment. *See United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970). But that does not mean that they are "beyond the reach of all inspection." *Id.* at 252. Rather, a package may be briefly detained for further investigation when there is reasonable suspicion of criminal activity. *See United States v. Robinson*, 390 F.3d 853, 869–70 (6th Cir. 2004). "To determine whether reasonable suspicion existed, we look to the totality of the circumstances and do not engage in a divide-and-conquer analysis but consider factors as a whole." *United States v. Sherrell*, No. 23-3562, 2024 WL 3520399, at *2 (6th Cir. July 24, 2024) (internal quotation marks omitted). When evaluating the totality of the circumstances, this court has relied on factors from the Postal Service's "drug package profile." *United States v. Alexander*, 540 F.3d 494, 501 (6th Cir. 2008). These factors include (1) whether "the return addressee and the return address do not match"; (2) whether the city of origin is a common "drug source" locale; and (3) "whether there have been repeated mailings involving the same sender and addressee." *Id.* at 501 n.2.

All of these factors were present here. Inspector Sherman testified that (1) the names on the label for both the sender and the recipient did not match their respective addresses; (2) the package originated from Tempe, Arizona—along the southwest border—which is in a "source state for narcotics"; and (3) two similar packages—with names that did not match the listed addresses—were sent from Phoenix, Arizona to the same Toledo address. When considered together, these factors provided reasonable suspicion to pull the package from the mail stream for further investigation. *See United States v. Odubajo*, No. 23-3654, 2024 WL 4368079, at *2 (6th Cir. June 12, 2024) (order) (concluding that an officer had reasonable suspicion to detain a package pending a dog sniff because the package was shipped from Arizona via overnight mail and the names on the package did not match their respective addresses), *cert. denied*, 145 S. Ct. 559 (2024); *United States v. Elgin*, 57 F. App'x 659, 661 (6th Cir. 2003) (order) (finding reasonable suspicion to detain a package because it was "mailed from a city that was known to be a common source of illegal drugs," listed a fictitious return address, and was one of four similar packages sent to the same address).

**B.**

After pulling the package from the mail stream, Inspector Sherman arranged a blind lineup for Maty, the drug-detecting dog. Bey argues that Maty's alert was unreliable and cannot serve as a basis to obtain a search warrant for the package. There is no "checklist" to prove the reliability of a drug-detecting dog. *Florida v. Harris*, 568 U.S. 237, 245 (2013). However, "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 246. And if a bona fide organization certified the dog after testing his reliability, then the dog's positive alert can establish probable cause to conduct a search. *United States v. Whitley*, 34 F.4th 522, 536 (6th Cir. 2022) (citing *Harris*, 568 U.S. at 246–47); *see also United States v. Williams*, 68 F.4th 304, 311 (6th Cir. 2023).

The government established Maty's reliability at Bey's preliminary hearing. Inspector Sherman testified that Maty was assigned to the Perrysburg Township Police Department. Maty received 240 hours of training by a master trainer, was certified by the Ohio Peace Officer's Training Academy, and "routinely train[ed] on detecting narcotics." Prelim. Hr'g Tr., R.37 at PageID 244. Because Maty gave a positive alert during the blind lineup, there was probable cause to obtain a search warrant for the package. *See Elgin*, 57 F. App'x at 661 (holding that a drug-sniffing dog's alert to one package in a five-package lineup provided probable cause to search the package for narcotics).

**C.**

After Inspector Sherman opened the package and recovered approximately 5,000 pills of a substance containing fentanyl, he obtained an anticipatory search warrant for the package's intended destination: Bey's residence. "An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (internal quotation marks omitted). Anticipatory warrants have a "triggering condition" that must occur before law enforcement officers can execute the warrant. *Id.* The triggering condition for an

anticipatory search warrant must be "explicit, clear, and narrowly drawn." *United States v. Penney*, 576 F.3d 297, 310 (6th Cir. 2009) (internal quotation marks omitted). If the triggering condition occurs, then there is probable cause to execute the search warrant. *United States v. Perkins*, 887 F.3d 272, 274 (6th Cir. 2018) (citing *Grubbs*, 547 U.S. at 94).

Here, the discovery of fentanyl in the package undoubtedly supplied probable cause to obtain an anticipatory search warrant for Bey's residence. *See United States v. Bender*, 265 F.3d 464, 470 (6th Cir. 2001) (concluding that the discovery of narcotics in a package supported the issuance of an anticipatory search warrant for the package's destination). And as Inspector Sherman testified, Bey triggered the warrant by carrying the package inside the residence and opening it. Once the triggering event occurred, there was probable cause to search Bey's residence. *See United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002) (finding that "sufficient delivery" of a package containing narcotics to a residence satisfied the triggering condition for an anticipatory search warrant). Thus, there was no constitutional error, plain or otherwise.

## III.

We **AFFIRM** the district court's judgment.

RITZ, Circuit Judge, concurring in the judgment.  I agree with the majority that we should affirm the district court's judgment, but I would do so on different grounds.

Mich'el Lulu Bey argues that law enforcement officers violated his Fourth Amendment rights.  In particular, he argues that officers did not have reasonable suspicion to seize the package that led to the search of his residence, and that the drug-detecting dog's alert on that package was faulty.  But Bey did not file a motion to suppress in the court below, so the court never had an opportunity to find relevant facts or evaluate the merits of his claims.  Also, at his plea hearing Bey failed to reserve his right to appeal any suppression issues.  *See* Fed. R. Crim. P. 11(a)(2).  Under these circumstances, I would affirm without considering the merits of Bey's new arguments.

As the majority notes, in certain circumstances we have proceeded to the merits of a Fourth Amendment claim even when a defendant enters an unconditional guilty plea.  Maj. Op. at 3 n.1.  For example, in *United States v. Duplessis*, No. 22-1511, 2023 WL 6926859, at *2 (6th Cir. Oct. 19, 2023), the defendant entered an unconditional plea without preserving his right to appeal the denial of his motion to suppress.  He then raised the suppression issue on appeal.  *Id.*  We chose not to decide whether he waived his claim because: (1) the defendant claimed he had not "knowingly waive[d]" his appeal right; (2) his appeal raised a "straightforward issue under the Fourth Amendment"; and (3) we did not see the government's waiver argument as "raising a jurisdictional defect."  *Id.*  Notably, and unlike in the present case, the defendant in *Duplessis* had filed a motion to suppress in the court below, and the parties presented evidence on the issues.  *See United States v. Duplessis*, No. 20-20350, 2021 WL 6062346 (E.D. Mich. Dec. 22, 2021) (order denying motion to suppress).

The majority, citing *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019), also correctly notes that we have at times applied plain-error review to Fourth Amendment claims

raised for the first time on appeal. Maj. Op. at 3. The *Crawford* defendant raised a new suppression issue on appeal that he had not raised below, and we reviewed the argument for plain error. 943 F.3d at 308. But unlike this case, Crawford had raised other suppression issues before the district court, which held a suppression hearing. *Id.* at 304. The case also proceeded to trial. *Id.* So, compared to Bey's case the facts were much more developed in the district court.

I agree that we have the discretion to review a newly raised suppression claim for plain error, even where the defendant did not preserve the issue when entering a plea. Still, "plain-error review of a forfeited claim is permissive, not mandatory." *United States v. Ramamoorthy*, 949 F.3d 955, 962 (6th Cir. 2020) (quotation omitted). And I would decline to exercise that review here.

We have declined to apply plain-error review where the district-court record on the newly raised claim is underdeveloped. For example, in *Ramamoorthy*, although the defendant had filed a motion to suppress in the district court, he raised a new suppression claim on appeal. *Id.* at 962. We reasoned that, although plain-error review was permissible, we typically decline to perform that review when the forfeited suppression claim "turns on unresolved questions of fact." *Id.* That is because "[s]uppression claims typically present fact-oriented issues," which we are "not equipped to decide . . . in the first instance." *Id.* at 962-63 (cleaned up). Also, we should "not expect district courts to rule on fact-intensive suppression issues based solely on evidence introduced for other purposes." *Id.* at 963. We allowed that "suppression claims raising only legal questions may arise from time to time, and in such cases plain-error review might be appropriate." *Id.* at 964. "But in the ordinary case, where the defendant's suppression claim hinges on unresolved issues of fact, the more prudent course is to decline to exercise plain-error review." *Id.*

8

Likewise, in *United States v. Clark*, 24 F.4th 565, 577-78 (6th Cir. 2022), the defendant failed to file any motion to suppress at all. We noted, citing *Ramamoorthy*, that the defendant's claim, "like most suppression claims, implicated . . . concerns" about fact-finding that we were ill-suited to decide in the first instance. *Id.* at 578. We also noted that the district court had not made any "factual findings relevant to" the suppression questions. *Id.* So, we declined to apply plain-error review. *Id.*

I view this case as more akin to *Clark* and *Ramamoorthy* than to *Duplessis* or *Crawford*. When considering suppression issues, the trial court is in the best position to weigh the evidence, evaluate witness credibility, and resolve factual questions. Here, we lack findings of fact from the district court on the issues raised by Bey. True, we have testimony from an officer at the preliminary hearing, but a preliminary hearing focuses on whether the government has established probable cause for the charges, not for a search warrant. *See* Fed. R. Crim. P. 5.1(e). In fact, at the preliminary hearing here, the court and prosecutor reiterated to Bey that any suppression issues were outside the scope of that proceeding, and that he would have the opportunity to pursue those arguments separately. RE 37, Prelim. Hr'g Tr., at PageID 259-61, 265, 270-71, 281. Because Bey never did so, the court never found facts that would establish reasonable suspicion or the reliability of the drug dog's alert.

In my view, then, we lack the factual record to decide the issues that Bey now raises, even under the plain-error standard. And as we noted in *Ramamoorthy*, "we are not well suited to resolve . . . critical disputes of fact in the first instance." 949 F.3d at 964. I would therefore decline to exercise plain-error review over Bey's claim and affirm the district court's judgment on that basis alone.